UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Estate of MARY MATTHEWS AND JAMES MATTHEWS,<br><br>   Plaintiff<br><br>      v.<br><br>NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>   Defendant. | Civil No. 07-301 (CKK) |

**MEMORANDUM OPINION**
(November 26, 2014)

      This suit alleging that Mary Matthews suffered injuries as a result of her treatment with the drug Zometa marketed and distributed by Novartis Pharmaceuticals Corporation, is before this Court on remand from Multi-District Litigation proceedings in the Middle District of Tennessee. Upon remand, the parties were directed to show cause why this case should not be transferred to the United States District Court in the district where Plaintiff resides. The parties agree that the case should be transferred out of the United States District Court for the District of Columbia, but disagree on the Court to which the case should be transferred: Plaintiff argues for the United States District Court for the Middle District of Florida, while Defendant argues for the United States District Court for the Southern District of Georgia. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this Motion, the Court

---

[1] Plaintiff's Response to Show Cause Order ("Pl.'s Resp."), ECF No. [8]; Defendant's Response to Show Cause Order ("Def.'s Resp."), ECF No. [9]; Defendant's Motion to Transfer Case ("Def.'s Mot"), ECF No. [14]; Plaintiff's Opposition to Motion to Transfer Case ("Pl.'s Opp'n"), ECF No. [15]; Defendant's Reply ("Def.'s Reply"), ECF No. [16].

finds that private and public interest considerations outweigh the deference given to Plaintiff's chosen forum. Accordingly, the Court GRANTS Defendant's Motion to Transfer to the United States District Court for the Southern District of Georgia and DENIES Plaintiff's request to transfer this case to the United States District Court for the Middle District of Florida.

## I.  BACKGROUND

### A. Factual Background

The following facts are not disputed by the parties. Mary Matthews began treatment with Zometa while she was living in Florida, within the jurisdiction of the United States District Court for the Middle District of Florida. Def.'s Mot., Ex. 3 (Dr. Schreiber Depo.), at 6-7. On July 3, 2002, in Florida, Dr. Fred Schreiber first prescribed Zometa to Ms. Mathews. *Id.* at 7. Dr. Schreiber treated Ms. Matthews with Zometa through November 2003. *Id.* at 8. Approximately a year after beginning treatment with Zometa, Ms. Matthews and her husband moved to Axson, Georgia, within the jurisdiction of the United States District Court for the Southern District of Georgia. *Id.*, Ex. 1 (Pl.'s Fact Sheet), at 5. While in Georgia, Ms. Matthews was treated by Drs. Marco Ayulo and Asit Jha with Zometa and a generic version of Aredia from November 2003 through May 2006. *Id.*, Ex. 4 (Ayulo Depo.) at 7-10; *id.*, Ex. 5 (Jha Depo.), at 7-10. Dr. Ayulo discontinued Ms. Matthews' use of Zometa in August 2005, but placed Ms. Matthews back on the drug during his last visit with her in May 2006. *Id.* at 9.

In June 2006, while still living in Georgia, Ms. Mathews was diagnosed by Dr. Fernando Alvarado with osteonecrosis of the jaw ("ONJ"), or "bone death resulting from poor blood supply to an area of the bone." Compl. ¶ 1; Def.'s Mot., Ex. 6 (Alvarado Depo.), at 8-9. Dr. Alvarado treated Ms. Matthews for her ONJ from June 2006 to July 2007. Def.'s Mot., Ex. 6 (Alvarado Depo.), at 7-10. Ms. Matthews was also treated for her ONJ by Dr. Steve Wilkerson

2

in Douglas, Georgia in June of 2006. *Id.*, Ex. 7 (Wilkerson Depo.), at 10. In total, Ms. Matthews was treated with the drugs at issue for over four years. For more than three of those years, Ms. Matthews was receiving her treatment in Georgia. Ms. and Mr. Matthews, who lived in Georgia at the time they filed this suit in 2007, have since passed away. *See* Pl.'s Opp'n at 2. Plaintiffs' daughter, April McMullins, is executor of the estates of Ms. and Mr. Mathews and has been substituted as Plaintiff in this action. *Id.* Ms. McMullins lives in Minneola, Florida, which is located in the Middle District of Florida. *Id.*

### B. Procedural Background

In February 2007, Ms. and Mr. Matthews filed suit in the District of Columbia against Defendant Novartis Pharmaceuticals Corporation for strict liability, negligent manufacture, failure to warn, breach of express warranty, breach of implied warranty, and (for Mr. Matthews) loss of consortium. Compl. ¶ 16-42. The Complaint alleges that Aredia and Zometa cause ONJ and that Ms. Matthews' ONJ was caused by her infusions of Zometa. *Id.* ¶ 1. Although the suit was brought in the District Court for the District of Columbia, the case was transferred in April 2007 to the Multi-District Litigation panel, which sent the case to the United States District Court for the Middle District of Tennessee to be considered along with other Aredia/Zometa cases. *See* Letter from MDL Panel, ECF No. [3].

In December 2013, the case was remanded to this Court. *See* Conditional Transfer Order, ECF No. [5]. After this Court issued a Show Cause Order requiring the parties to show why the case should not be transferred to the district where Plaintiff resides, the parties each responded that the case should be transferred out of the District Court for the District of Columbia, but disagreed as to the court to which the case should be transferred. Plaintiff advocates a transfer to

the United States District Court for the Middle District of Florida, while Defendant advocates a transfer to the United States District Court for the Southern District of Georgia.

The Court reviewed the parties' responses to the Show Cause Order, but found that neither party presented sufficiently supported facts for the Court to determine the appropriate district to which this matter should be transferred. *See* Order (April 10, 2014), ECF No. [13], at 1-2. In its Order, the Court noted that "when evaluating motions to transfer, courts should only consider undisputed facts supported by affidavits, depositions, stipulations, or other relevant documents." *Id.* at 1-2 (citing *Bederson v. United States*, 756 F.Supp.2d 38, 50 n. 6 (D.D.C. 2010) (citing *Midwest Precision Servs. Inc. v. PTM Indus. Corp.*, 574 F.Supp. 657, 659 (N.D. Ill. 1983))). Consequently, the Court ordered Defendant to file a Motion to Transfer with fully supported facts addressing, among other things, the location(s) where plaintiffs and their representatives live(d) at all relevant times, including presently; the location(s) where Ms. Matthews was treated with Aredia and Zometa and the length of time she received treatment at the location(s); the location(s) where Plaintiff was diagnosed and treated for jaw osteonecrosis and the length of time she received treatment at the location(s); the location and identity of witnesses in this case, particularly treating doctors; and the location of relevant documents in this case. Order (April 10, 2014), at 2. This Court further ordered Plaintiff to file a Response to Defendant's Motion, responding to Defendant's arguments and providing fully supported facts addressing, among other things, the factors outlined above as they pertain to Plaintiff's argument regarding the proper court to which this case should be transferred. *Id*. Defendant was permitted to file a Reply. *Id*. at 2-3. Having received all of the parties' briefing, the issue now ripe and before the Court is whether the "convenience of parties and witnesses, in the interest of justice" are in favor

of transferring venue to the United States District Court for the Southern District of Georgia or the United States District Court for the Middle District of Florida. 28 U.S.C. § 1404(a).

## II.   LEGAL STANDARD

Both parties seek to have this Court transfer the venue of this case pursuant to 28 U.S.C. § 1404(a). Pursuant to 28 U.S.C. § 1404(a), a court may transfer a case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interests of justice." Determining whether transfer is appropriate pursuant to 28 U.S.C. § 1404(a) calls for a two-part inquiry. The Court must first ask whether the transferee forum is one where the action "might have been brought" originally. *Id.* Venue is proper in a "judicial district where any defendant resides . . . [or] in which a substantial part of the events or omissions giving rise to the claim occurred. . . [or] any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

Second, the Court must consider whether private and public interest factors weigh in favor of transfer. *Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 37 (D.D.C. 2006). In considering whether a transfer would be proper, the court may consider the following "private interest" factors:

> (1) The plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). The Court must also weigh public interest considerations such as (1) the transferee court's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative

congestion of the calendars of the potential transferee courts; and (3) the local interest in deciding local controversies at home. *Id*. at 128. Section 1404(a) vests discretion in the district court to conduct an "individualized, case-by-case analysis." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The "plaintiff's choice of forum is ordinarily entitled to deference," *Nat'l Ass'n of Home Builders v. U.S. Envt'l Prot. Agency*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009) (citation omitted).

The moving party bears the burden of establishing that convenience and the interests of justice weigh in favor of a transfer to that district. *See Int'l Bhd. of Painters & Allied Trades Union v. Best Painting and Sandblasting Co., Inc.*, 621 F. Supp. 906, 907 (D.D.C. 1985). As both parties have effectively moved the Court to transfer this case out of the District Court for the District of Columbia, each party bears the burden of establishing that the relevant factors favor transfer to their chosen district.

### III. DISCUSSION

In regards to the threshold inquiry under 28 U.S.C. § 1404(a), the Court concludes—and the parties do not dispute—that this action could have properly been brought in either the Southern District of Georgia or the Middle District of Florida. *See generally* Def.'s Reply; *see* Pl.'s Opp'n at 5. Accordingly, the only question for the Court to analyze is whether the parties have met their burden of showing that their private interests and the public interest favor transfer of this action to the Middle District of Florida or the Southern District of Georgia. The Court shall consider each private interest factor and public interest factor in turn.

### A. Private Interest Factors

#### 1. Plaintiff's Choice of Forum

"[P]laintiff's choice of forum is a 'paramount consideration in any determination of a

transfer request.'" *Sheffer v. Novartis Pharms. Corp.*, 873 F. Supp. 2d 371, 375 (D.D.C. 2012) (quoting *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002). Plaintiff has selected the Middle District of Florida as her forum. While courts should give deference to a plaintiff's choice of forum, "this deference is weakened if . . . another 'jurisdiction has the stronger factual nexus.'" *Scurlock v. Lappin*, 870 F.Supp.2d 116, 123 (D.D.C. 2012) (citation omitted); *see also Miller v. Insulatino Contractors, Inc.*, 608 F.Supp.2d 97, 102 (D.D.C. 2009) ("When the events occur in more than one district, a court can consider which jurisdiction has the stronger factual nexus to the claims."). As explained in greater detail, *infra*, Georgia has the stronger factual nexus to this case. Accordingly, this factor weighs only slightly in favor of transfer to the Middle District of Florida.

### 2. Defendant's Choice of Forum

The defendant's choice of forum is a consideration when deciding a § 1404(a) motion, however, it is not ordinarily entitled to deference. *Sheffer*, 873 F.Supp.2d at 376 (citing *Mahoney v. Eli Lilly & Co.*, 545 F.Supp.2d 123, 127 (D.D.C. 2008)). Moreover, Novartis, "a multinational corporation, readily able to defend this lawsuit in either district, has no real stake in having the case heard in either forum." *Id.* at 376 (finding defendant Novartis' choice of forum to be a neutral factor in a Zometa/Aredia products liability case); *see also Veney v. Starbucks Corp.,* 559 F.Supp.2d 79, 84 (D.D.C.2008) (giving little weight to multinational corporation's choice of forum). Accordingly, the Court finds this factor to be neutral.

### 3. Where Claim Arose

The Court must next consider where this claim arose. Pharmaceutical product liability cases arise wherever the plaintiff took the drug, purchased the drug, and was prescribed the drug. *Sheffer*, 873 F.Supp.2d at 376 (citing *Dean v. Eli Lilly & Co.*, 515 F. Supp. 2d 18, 22 (D.D.C.

7

2007)). In this case, Ms. Matthews ingested, purchased, and was prescribed the drugs at issue in both the Middle District of Florida and the Southern District of Georgia. Accordingly, the claim at issue here could be said to have arisen in either the Middle District of Florida or the Southern District of Georgia. However, the majority of the material events that constitute the factual basis of Plaintiff's claims occurred in the Southern District of Georgia. Ms. Mathews received all of her generic Aredia infusions and most of her Zometa infusions in Georgia. Although Ms. Mathews was prescribed and took Zometa in each of the transferee districts, she was diagnosed with and treated for the injuries allegedly caused by the drugs in Georgia. Accordingly, this factor weighs in favor of transfer to the Southern District of Georgia. *See Lagor v. Eli Lilly and Co.*, No. 06-1967, 2007 WL 1748888, *3 (D.D.C. 2007) (transferring case to Rhode Island even though plaintiff ingested DES in both Rhode Island and Massachusetts because "the clear majority of the material events that constitute the factual basis of plaintiffs' claims occurred in Rhode Island.").

    **4. Convenience of the Parties**

Plaintiff next argues that transfer to the Middle District of Florida is most appropriate because she resides in the Middle District of Florida making that location far more convenient for her. Plaintiff contends that the two districts are equally convenient to Defendant and, therefore, this factor weights in her favor. Pl.'s Opp'n at 2. The Court does not find this factor dispositive.

Plaintiff contends that litigating in the Middle District of Florida would be more convenient because it would "reduce[ ] all costs on [Plaintiff] to appearing at trial." Pl.'s Opp'n at 3. However, Plaintiff makes no argument that the added cost of litigation would be unduly burdensome in the Southern District of Georgia. *See Gemological Inst. of Am., Inc., v. Thi-Dai*

*Phan,* 145 F. Supp.2d 68, 74 (D.D.C. 2001) (finding transfer away from plaintiff's preferred forum appropriate where plaintiffs did not "offer[ ] any documentation to show that [the transfer] would be unduly burdensome to its finances"). Moreover, the Court notes that the two proposed transferee districts are adjacent to each other and, although the Southern District of Georgia is not as convenient as the Middle District of Florida, Plaintiff could reach a Southern District of Georgia district court by car without an unduly lengthy drive. *See Lagor*, 2007 WL 1748888, at *11 (holding that the relatively close proximity of the parties' desired forums minimized any inconvenience to plaintiffs that could result from a transfer to Rhode Island as opposed to a transfer to Massachusetts). Accordingly, this factor weighs only slightly in favor of transferring this case to the Middle District of Florida.

### 5. Convenience of Witnesses

Defendant's argument that this case should be transferred to the Southern District of Georgia rests primarily on the fact that all of the treating physicians who might be called at trial, except for one, reside in Georgia. *See* Def's. Mot. at 4. Defendant notes that by transferring this case to Georgia, four of Ms. Matthews' treating physicians will be able to appear in person while only the initial prescriber of the drugs in question, Dr. Schreiber, would potentially have to appear by deposition. *Id*. Plaintiff, on the other hand, argues that this case should be transferred to the Middle District of Florida because Ms. Matthews' first prescribing physician resides there. Pl.'s Opp'n at 3-4.

"The convenience of the witnesses has been described as 'the most critical factor' to examine when deciding a motion to transfer." *Sheffer*, 873 F. Supp. 2d at 377(quoting *Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F.Supp.2d 92, 97 (D.D.C. 2003)). Courts in this Circuit have repeatedly recognized that when the vast majority of essential fact witnesses are within the

9

subpoena power of a proposed district this factor favors transfer to that district because it will be more convenient for fact witnesses to appear. *See Dean*, 515 F. Supp. 2d at 22-23 ("Because the vast majority of essential fact witnesses are within the subpoena power of the District of Massachusetts (but not the District of Columbia) and because it will be more convenient for fact witnesses to appear in the District of Massachusetts, this factor favors transfer."); *Lagor*, 2007 WL 1748888, at *4 (finding transfer appropriate to the district where it "will be the most convenient for the greatest number of potential witnesses"); *MacMunn v. Eli Lilly Co.*, 559 F.Supp.2d 58, 62-63 (D.D.C. 2008) ("the fact that almost all of the nonparty, nonexpert witnesses reside in Massachusetts clearly weighs in favor of transfer").

The causes of action alleged in this case will require testimony from Ms. Matthews' prescribing physicians and the physicians who treated her for the injuries Plaintiff alleges were caused by Defendant's drugs. While Ms. Mathews' initial prescribing physician, Dr. Schreiber, is located in Florida, four physicians located in Georgia also prescribed Ms. Mathews the drugs at issue and/or diagnosed her and treated her for her eventual injuries. The testimony of all of these physicians will likely be important to this case, but the greatest number of physicians reside in Georgia. Moreover, Plaintiff has not indicated any reason to believe that Dr. Schreiber is an unwilling witness who would not present himself at trial thus necessitating the subpoena power of a district court. *See Thayer/Patricof Educ. Funding, L.L.C.,* 196 F. Supp. 2d at 32 (holding that the movant must show that a witness would be unwilling to testify; absent any such showing the Court assumes the witness would voluntarily appear). Accordingly, the convenience of the witnesses weighs in favor of transferring this case to the Southern District of Georgia.

### 6. Ease of Access to Sources of Proof

Finally, although modern technology makes the location of documents less important than it once was, this Court finds that the ease of access to sources of documentary proof weighs in favor of transfer to the Southern District of Georgia, where a vast majority of the document owners—i.e. the prescribing and treating physicians—can be reached with a subpoena if necessary.

### B. Public Interest Factors

#### 1. Transferee's Familiarity with Governing Laws & Pendency of Related Actions

Courts have long held that it is preferable to try a diversity case "in a forum that is at home with the state law that must govern the case." *Van Dusen v. Barrack,* 376 U.S. 612, 645 (1964). Defendant argues that transfer to the Southern District of Georgia is appropriate because Georgia law will likely apply to issues of liability and compensatory damages given that Ms. Mathews was a resident of Georgia, received most of her treatments with the drugs at issue in Georgia, and was diagnosed and treated for her jaw injury in Georgia. Def.'s Mot. at 5. Plaintiff argues that a transfer is favored to the Middle District of Florida because it is experienced with Aredia/Zometa cases and has a number of other Aredia/Zometa cases that are presently pending. Pl.'s Opp'n at 4. Plaintiff also argues that Florida law will likely govern this matter. *Id.* at 5.

The Court finds that this factor weighs in favor of transfer to the Southern District of Georgia because Georgia law will likely govern. When a case is transferred under 28 U.S.C. § 1404(a), the transferee court is "obligated to apply the state law that would have been applied if there had been no change of venue." *Van Dusen,* 376 U.S. at 639. This principle requires District of Columbia choice of law, as it pertains to the governing substantive law, to apply in this case. *See id.* Under the District of Columbia's choice of law analysis, the Court must

analyze four factors in determining which state's substantive law will apply: (1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) where the relationship between the parties is centered. *Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C. 2002) (citing Restatement (Second) of Conflict of Laws § 145 cmt. d (1971)). Here, it appears that Ms. Matthews' alleged injury occurred in the Southern District of Georgia where she was diagnosed with ONJ three years after leaving Florida to move to Georgia. *Cf. Lagor*, 2007 WL 1748888, at *5 (DES products liability case holding that the purported injury should not be measured at ingestion, but instead, when the injured party was born prematurely). The conduct that caused Ms. Matthews' injury—her prescription, purchase, and ingestion of the drugs—occurred in both Florida and Georgia, however, the majority of the conduct occurred in Georgia where she was prescribed the drugs (and even taken off and put back on the drugs) and ingested the drugs over three years as opposed to one year in Florida. As for the third factor, Defendant is incorporated in neither of the proposed transferee districts and does business in both, making this a neutral factor in the choice-of-law analysis. At the time they filed their Complaint, Ms. and Mr. Mathews were domiciled in and residents of the Southern District of Georgia. Lastly, the relationship between the parties is primarily centered in the Southern District of Georgia since it is the site where Ms. Mathews received most of the treatment with the drugs, and where her alleged injuries were diagnosed and treated. Accordingly, the Court finds that Georgia law would likely govern this case.

Since Georgia products liability law will likely govern and products-liability law "involves complex and continually evolving concepts," *Sheffer*, 873 F.Supp.2d at 380 (quoting *Godoy ex rel. Gramling v. E.I. du Pont de Nemours and Co.*, 768 N.W.2d 674, 680 (2009)), the

Southern District of Georgia's experience interpreting Georgia products-liability law strongly favors transfer. *See id.* ("Familiarity with the governing law is more significant when legal issues presented are complex or unsettled."). Even if the Middle District of Florida has extensive experience with Aredia and Zometa cases, courts have held that this experience does not counterbalance the interest in having the trial of a diversity case "in a forum that is at home with the state law that must govern the case." *MacMunn,* 559 F.Supp.2d at 63 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)).

### 2. Relative Congestion of Potential Transferee Courts

As for the relative congestion of the proposed transferee courts, Defendant contends that the Southern District of Georgia's docket is less congested than the docket of the Middle District of Florida. In support of this contention, Defendant cites to the United States Courts' website which shows that the Middle District of Florida has 7,392 cases pending, while the Southern District of Georgia has only 546 pending cases. Def.'s Mot. at 5-6, n. 3. Moreover, the median time from filing to disposition of a case in the Middle District of Florida is 9.2 months and 8 months in the Southern District of Georgia.[2] *Id.* Plaintiff does not dispute this information. Accordingly, this factor weighs in favor of transfer to the Southern District of Georgia.

---

[2]http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2013/appendices/C05Sep13.pdf (last visited Nov. 26, 2014). The Court has included the most recent statistics from 2013 in this Memorandum Opinion. In its Motion, Defendant cited to 2012 statistics which indicated that the medium time from filing to disposition of a case in the Middle District of Florida was 38.4 months, but only 8.1 months in the Southern District of Georgia. In 2012, there were 12,884 cases pending in the Middle District of Florida and only 591 cases pending in the Southern District of Georgia. *See* Def.'s Mot. at 5-6 (citing http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2012/appendices/C05Sep12.pdf). The Court finds that the more recent statistics still support the thrust of Defendant's argument as to this factor.

### 3. Local Interest in Deciding Local Controversies at Home

Finally, the Court must consider the "interest [of each state] in redressing the harms of its citizens." *MacMunn,* 559 F.Supp.2d at 63. Each party argues that their proposed transferee district has an interest in deciding this case because the claim arose within that district. *See* Pl.'s Opp'n at 5; Def.'s Mot. at 5. However, the Court found, *supra*, that Plaintiff's claim is most appropriately characterized as arising in Georgia. As Georgia has an interest in litigating controversies that arise locally, this factor weighs in favor of transfer to the Southern District of Georgia. *See MacMunn*, 559 F.Supp.2d at 63 ("The District, while its contacts with the case are not 'legally insignificant,' . . . does not derive as great an interest from those contacts as Massachusetts does from its interest in redressing the harms of its citizens.").

### IV. CONCLUSION

For the foregoing reasons, the Court finds that all of the private-interest and public-interest factors either favor granting Defendant's motion to transfer this case to the Southern District of Georgia or are neutral, with the exception of Plaintiff's choice of forum and convenience of the parties. However, the significance of Plaintiff's chosen forum and any inconvenience to Plaintiff of litigating in Defendant's chosen forum is diminished because Defendant's chosen forum has the stronger factual nexus to this case and Plaintiff has not demonstrated she will be unduly burdened by litigating in Defendant's chosen forum. Accordingly, the Court finds that it would be in the interest of justice to transfer this case to the United States District Court for the Southern District of Georgia and, therefore, GRANTS Defendant's Motion. An appropriate Order accompanies this Memorandum Opinion.

                                               */s/*
                                               **COLLEEN KOLLAR-KOTELLY**
                                               UNITED STATES DISTRICT JUDGE